IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:       :      CHAPTER 13
        :
MELISSA MARIE CALDWELL    :      CASE NO. 1:24-BK-00927-HWV
        :
     DEBTOR    :

### OBJECTION OF THE UNITED STATES TRUSTEE TO THE FIRST APPLICATION FOR INTERIM COMPENSATION FILED BY ATTORNEY E. HALEY ROHRBAUGH

NOW COMES the United States Trustee ("UST"), through undersigned counsel, and respectfully objects to the first application for interim compensation filed by Attorney E. haley Rohrbaugh, and in support thereof, states as follows:

1.      On April 15, 2024, Melissa Marie Caldwell ("Debtor") filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). Docket Entry Number[1] 1.

2.      On July 15, 2024, the Debtor filed Schedules A through J, a Statement of Financial Affairs, and a Chapter 13 Statement of Current Monthly Income (Form 122A-1) (collectively, the "Schedules"). Doc. No. 33.

3.      Along with the Schedules, Attorney Rohrbaugh filed a Disclosure of Compensation of Attorney for the Debtors, wherein she disclosed receipt of $313.00 pre-petition and further indicated she would be billing his clients hourly (Lodestar) for her work throughout the duration of the Chapter 13. Id., Pg. 51.

4.      Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period reflected the Debtor was below median and the applicable commitment period was three (3) years. Id., Pgs. 43-45.

---

[1] Hereinafter "Doc. No."

5. On Schedule J, Debtors reported net monthly income of $302.22. Id., Pgs. 32-33.

6. Also on July 15, 2024, Debtor filed her Chapter 13 Plan (the "Plan"), which set forth a total base plan of $143,273.96 to be paid over sixty (60) months. The Plan, as constructed, featured step up payments with $300.00 a month beginning in July 2024 and continuing through December 2024, and then increasing to $600.00 payments for six months, and finally increasing to $2,997.26 through the end of the case. Doc. No. 34.

7. Furthermore, the Plan identified two (2) mortgages on Debtor's principal residence, the first with $118,364.24 in pre-petition mortgage arrears and the second to be stripped off as unsecured. In addition to the mortgage, the Plan was intended to address pre-petition arrearages on an auto loan and priority taxes to the Internal Revenue Service.

8. On August 16, 2024, the Chapter 13 Trustee filed an Objection to the Plan, wherein the Trustee alleged the Plan proposed an unrealistic and speculative step payment and further asserted the debtor had not filed required Federal tax returns in 2021, 2022, and 2023. Doc. No. 39.

9. On November 20, 2024, the Trustee's Objection to the Debtor's Plan was sustained with an amended Plan to be filed within sixty (60) days.

10. On January 7, 2025, the Debtor filed her First Amended Chapter 13 Plan (the "Amended Plan"), which set forth a total base plan of $24,500.00 to be paid over sixty (60) months. The Amended Plan provided for equal payments of $440.00 a month over the remaining fifty-five (55) months. The Amended Plan specifically removed the pre-petition mortgage arrears from the calculation and states the pre- and post-petition arrears will be addressed via a loan modification. Doc. No. 48.

11. On February 10, 2025, the Trustee filed an Objection to the Amended Plan, wherein the Trustee challenged the feasibility of Debtor's Amended Plan as the Debtor had insufficient net monthly income to make the proposed plan payments, the Amended Plan failed to provide for a sale or refinance within 6 months, and finally that the Federal tax returns for 2022 were still not filed. Doc. No. 55.

12. On May 13, 2025, the day prior to the continued Confirmation hearing, the Debtor filed her Second Amended Chapter 13 Plan (the "Second Amended Plan"), which set forth a total base plan of $42,961.34 to be paid over sixty (60) months. The Second Amended Plan, as constructed, featured step-up payments with $440.00 a month beginning in June 2025 and continuing through September 2025, and then increasing to $876.12 payments through the end of the case. The Second Amended Plan now provided for the pre-petition mortgage arrears to cured through a loan modification, but $12,654.90 of post-petition arrears were now included, along with post-petition arrears on the auto loan. Doc. No. 72.

13. On June 16, 2025, the Trustee filed an Objection to the Second Amended Plan, wherein the Trustee challenged the feasibility of Debtor's Second Amended Plan as the Debtor had insufficient net monthly income to make the proposed plan payments, the Amended Plan failed to provide for a sale or refinance within 6 months, and finally that the Federal tax returns for 2022 were still not filed. Doc. No. 79.

14. On June 24, 2025, the Debtor filed her Third Amended Chapter 13 Plan (the "Third Amended Plan"), which set forth a total base plan of $31,540.00 to be paid over sixty (60) months. The Third Amended Plan, as constructed, featured step-up payments with $450.00 a month beginning in July 2025 and continuing through December 2025, and then increasing to $635.00 payments through the end of the case. The Third Amended Plan now provided for the pre- and

3

post-petition mortgage arrears to cured through a loan modification and removed the post-petition arrears on the auto loan.  Doc. No. 81.

15.     On July 18, 2025, an Objection to Confirmation of the Third Amended plan was filed on behalf of U.S. Bank National Association, the mortgage holder.  Doc. No. 88.

16.     On July 23, 2025, the Trustee filed an Objection to the Third Amended Plan, wherein the Trustee challenged the feasibility of Debtor's Second Amended Plan as the Debtor had insufficient net monthly income to make the proposed plan payments and that the Federal tax returns for 2022 were still not filed. Doc. No. 89.

17.     On July 31, 2025, the Objections filed by U.S. Bank and the Trustee were sustained and the Debtor directed to file an amended plan within forty-five (45) days.  Doc. No. 90.

18.     On September 15, 2025, the filed her Fourth Amended Chapter 13 Plan (the "Fourth Amended Plan"), which set forth a total base plan of $41,211.35 to be paid over sixty (60) months. The Fourth Amended Plan, as constructed, featured step-up payments with $450.00 a month beginning in September 2025 and continuing through March 2026, and then increasing to $917.35 for the remaining forty-one (41) months.  The Fourth Amended Plan now provided for the pre-petition mortgage arrears to be cured through a loan modification, but $12,654.90 of post-petition arrears were now included in the Plan.  Additionally, the auto loan was now removed from the plan, while the priority taxes to the Internal Revenue Service increased to $18,556.35.  Doc. No. 93.

19.     On September 17, 2025, the Trustee filed an Objection to the Fourth Amended Plan, wherein the Trustee challenged the feasibility of Debtor's Fourth Amended Plan as the Debtor had insufficient net monthly income to make the proposed plan payments, the Federal tax returns for 2022 were still not filed, the Plan math did not compute, and it was unclear what arrearages, if any, were being paid on the mortgage to U.S. Bank.  Doc. No. 96.

4

20. On November 13, 2025, the Court scheduled the Fourth Amended Plan for confirmation on December 10, 2025. Doc. No. 104.

21. On December 9, 2025, the day prior to the Confirmation hearing, the Debtor filed her Fifth Amended Chapter 13 Plan (the "Fifth Amended Plan"), which set forth a total base plan of $30,311.91 to be paid over sixty (60) months. The Fifth Amended Plan, as constructed, featured step-up payments with $450.00 a month beginning in January 2026 and continuing through June 2026, and then increasing to $708.43 for the remaining thirty-seven (37) months. The Fifth Amended Plan no longer provided treatment for the mortgage arrears to U.S. Bank, only direct payments to U.S. Bank's servicer for the monthly payments. Doc. No. 105.

22. On December 18, 2025, the Trustee filed an Objection to the Fifth Amended Plan, wherein the Trustee challenged the feasibility of Debtor's Fifth Amended Plan as the Debtor had insufficient net monthly income to make the proposed plan payments and the Federal tax returns for 2022 were still not filed. Doc. No. 109.

23. On February 4, 2026, a hearing was held on the Fifth Amended Plan. The objections were not ruled upon; however the Debtor was ordered to file an amended plan within thirty (30) days. Doc. No. 114.

24. On March 11, 2026, Attorney Rohrbaugh filed the First Interim Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses ("**First Application**") seeking $9,000.00 in fees and $802.43 in expenses. Doc. No. 115.

25. That same day, the Debtor filed her Sixth Amended Chapter 13 Plan (the "Sixth Amended Plan"), which set forth a total base plan of $30,311.91 to be paid over sixty (60) months. The Sixth Amended Plan featured step-up payments with $450.00 a month beginning in April 2026 and continuing through September 2026, and then increasing to $785.00 for the remaining thirty-

5

four (34) months. The Sixth Amended Plan increased the plan base and the step payment but is otherwise unchanged from the Fifth Amended Plan.

26. On March 23, 2026, the Trustee filed an Objection to the Sixth Amended Plan, wherein the Trustee challenged the feasibility of Debtor's Sixth Amended Plan as the Debtor had insufficient net monthly income to make the proposed plan payments, the proposed step payments were unrealistic and speculative, and the Federal tax returns for 2022 were still not filed.

27. The Debtor has not amended Schedule I or J since filing her Schedules on July 15, 2024.

28. Pursuant to 11 U.S.C. §307, the UST has standing to be heard on this matter and for the reasons set forth below, the UST Objects to Attorney Rohrbaugh's First Application.

29. Generally, the Court may award "reasonable compensation for actual, necessary services rendered" by debtor's counsel provided that the nature, extent, value, and time spent on the services are necessary, reasonable, and required for administration of the estate, see 11 U.S.C. § 330(a).

30. A bankruptcy court has "broad discretion" to determine reasonable attorneys' fees, as the "bankruptcy court is more familiar with the actual services performed and has a far better means of knowing what is just and reasonable than an appellate court can have." *In re Asarco, LLC,* 751 F.3d 291, 294 (5th Cir. 2014) (citing *In re Lawler,* 807 F.2d 1207, 1211 (5th Cir. 1987) (internal quotation marks and citation omitted)); *In re Smith,* 331 B.R. 622, 628 (Bankr. M.D. Pa. 2005).

31. The onus is on the applicant to prove that the fees and expenses sought are reasonable and necessary. *Zolfo, Copper & Co. v. Sunbeam-Oster Co.,* 50 F.3d 253, 261 (3d Cir. 1995).

32.     The most often cited case in this Circuit regarding fee applications is *In re Busy Building Ctrs., Inc.,* 19 F.3d 833 (3d Cir. 1994).

33.     Specifically, the *Busy Beaver* Court reviewed the statutory and textual history of § 330(a) and found that the focus of review should be on "who" performed the service and whether it was reasonable, actual, and necessary. *Id.,* at 848-851.

34.     The *Busy Beaver* Court further noted that objections to fee applications are "relatively" uncommon and identified several reasons for the lack objections. *Id.,* at 842-843.

35.     As Judge Conway noted in *In re Badyrka*, 2022 Bankr.LEXIS 2712, Bankr. M.D. Pa. 5:20-03618, applying *Busy Beaver* to Chapter 13 cases, objections to fee applications are uncommon because "(i) the debtor has no real incentive to object to his counsel's fees since he or she is obligated to pay a fixed monthly payment based upon a determination of his or her disposable income; and (ii) creditors have no incentive since the cost-benefit of contesting the fees would not warrant a small pro-rata increase in plan distribution amount."

36.     A reduction of fees where, in the sound discretion of the bankruptcy court, such fees are unreasonable may be appropriate where the applicant failed to exercise billing judgment. "The exercise of billing judgment is the voluntary reduction of a fee by counsel to a private client for services that either conferred negligible benefit or were excessive." *In re Maxine's, Inc.,* 304 B.R. 245, 249 (Bankr. D. Md. 2003).

37.     Judge Mary France noted, in evaluating a fee application, "[a] bankruptcy court must balance adequately compensating attorneys in order to encourage competent counsel to represent bankruptcy debtors with insuring the costs of administration do not consume assets that would otherwise be available to creditors.  In making a fee determination, the court must take into

7

consideration whether the professional exercised "reasonable billing judgment."" *In re Fontaine,* 2015 Bankr. LEXIS 2919, *7 (Bankr. M.D. Pa. 2015).

38.     The UST posits that Attorney Rohrbaugh has failed to exercise reasonable billing judgment in that the fees either conferred negligible benefit to the Debtors and/or the Debtors' estate or reached such an amount that the costs of administration are consuming assets of the Debtors to the detriment of Debtors' creditors.  In support of its position, the UST asserts the following:

    a.  Debtor's Schedule J, as filed, reflects net monthly disposable income of $303.22; yet Attorney Rohrbaugh has filed seven (7) Chapter 13 Plans to date, each of which called for payments well more than the Debtor's net monthly disposable income.  The lack of sufficient income has been raised in every single objection to confirmation filed by the Chapter 13 Trustee and Attorney Rohrbaugh has failed to account for this issue in any of the amended plans.

    b.  Debtor has not provided evidence or proof that the 2022 Federal tax returns have been filed with the Internal Revenue Service.  Again, this allegation has been raised by the Truste in every single objection to confirmation filed by the Chapter 13 Trustee and has not been adequately addressed.

39.     The UST objects to the First Application as the incurred fees and expenses related to the preparation and service of amended Chapter 13 plans, as well as the confirmation hearings, offer little to no benefit to the Debtor or the Estate or, in the alternative, are unnecessarily consuming funds of the estate.  Based upon the UST's review of the First Application, the fees related to the preparation and service of the amended Chapter 13 plans and the various confirmation hearings total approximately $2,000.00 in fees and $220.18 in expenses.

8

WHEREFORE, for the reasons stated above, the United States Trustee respectfully requests that this Court enter an Order reducing Attorney Rohrbaugh's First Application by $2,000.00 in legal fees and $220.18 in expenses, and granting such other and further relief as is just and equitable.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

Joseph P. Schalk
Acting Assistant United States Trustee

By: __/s/__ Joseph P. Schalk
Joseph P. Schalk, Esq.
PA Bar ID 91656
Office of the United States Trustee
1501 N. 6th Street, Box 302
Harrisburg, PA 17102
Tel.: (717) 221-4515
Email: Joseph.Schalk@usdoj.gov

Dated: April 6, 2026

9